JEAN MURRAY, Plaintiff-Appellee, v. JAMES FLETCHER, Indiv. and d/b/a Fletcher & Company Realtors, Defendant-Appellant.

Third District    No. 80-95

Opinion filed February 10, 1981.

David M. Lynch, of Lynch & Bloom, of Peoria, for appellant.

Richard C. Frasco, of Peoria, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant, James Fletcher, a real estate broker, appeals from a judgment requiring him to pay a real estate commission in the sum of $1,260 to the plaintiff Jean Murray for property sold by her after she left defendant's employ. According to the record, on April 1, 1978, while working for defendant as a salesperson, plaintiff obtained a listing of real property located at 9933 Katwin Court, Peoria, Illinois. The listing was for a 120-day period. In May or June, 1978, plaintiff terminated her employment with defendant and began working for Lincoln National Realty. On June 18, 1978, while working for Lincoln, plaintiff sold the Katwin Court property, and defendant divided the realtor's commission with Lincoln after deducting a small sum for the multiple listing fee. Lincoln received $2,513.60, one-half of which Lincoln paid to plaintiff. Plaintiff asserted her claim against defendant for one-half of the commission retained by him. When defendant refused to pay, plaintiff filed suit.

At the bench trial, defendant, testifying as an adverse party under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60), explained that salespersons in his employ received two separate commissions—a listing commission and a selling commission. If one person both obtained the listing and sold the property, that person received a commission equal to 50 percent of the total realtor's commission with defendant-employer retaining the other 50 percent. If a salesperson only obtained the listing, she received 25 percent of the total, or if she sold a property for which she did not obtain the listing, she would receive 25 percent as the selling commission. Defendant stated that plaintiff worked for him under the same compensation agreement as all his other sales people who were independent contractors. He identified a blank contract form which he stated was an exact copy of the contract executed by himself and plaintiff, the original of which had disappeared from his office files.

Plaintiff testified that when she signed the contract, defendant was not present and that the contract stated that she would receive 25 percent of the total commission for any house which she listed. She went on to describe a conversation with defendant occurring about the time she left defendant's employment, during which defendant said that he would pay her the 25 percent listing commission if she would continue to try to sell the Katwin Court property even though she worked for another broker. She agreed. When shown the blank contract form which defendant had said was the contract executed by plaintiff, she noted that the commissions to be paid were not spelled out in the blank form but they were spelled out in the document she signed.

The contract form indicated that all listings were the property of defendant and that upon termination of the agreement, any listings still in

effect on unsold property would remain the sole property of defendant. The contract also provided that a salesman's right to commissions which accrued prior to the termination of the contract "shall be divested by the termination hereof." Other documents admitted into evidence included the listing contract for the Katwin Court property, signed by plaintiff and dated April 1, 1978, effective for 120 days from that date, and also the contract to purchase the property, dated July 17, 1978, and signed by plaintiff.

Upon appeal from the judgment in favor of plaintiff, defendant contends, first, that the judgment was erroneous as a matter of law because of a statutory violation, and second, that the judgment was contrary to the manifest weight of the evidence.

Defendant's first contention is based upon section 10(d) of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5727(d)), which provides as follows:

"(d) No real estate salesman shall accept a commission or valuable consideration for the performance of any of the acts herein specified from any person, except his employer, who, if a real estate broker, must be registered under the provisions hereof."

Defendant argues that this provision makes unlawful a commission payment from him to plaintiff after she had begun working for another realtor because by statute she can receive a commission only from her present employer. He further reasons that he will be placing his own license in jeopardy under those provisions which prohibit any broker from paying a commission in violation of the Act. See Ill. Rev. Stat. 1977, ch. 111, par. 5732(e) (10).

The statute in question does not expressly deal with the question of a salesperson's transition between employers. We see nothing in the statutory language which would prohibit an agreement whereby the departing employee would be entitled to any commissions accruing during employment but not yet collected. In our view, such an agreement would not be contrary to the statute, and so the judgment of the trial court was not erroneous as a matter of law.

Defendant also contends that the decision of the trial court was contrary to the manifest weight of the evidence. He admits that the testimony constituting his case in chief is not before this court because the stenographer was unable to transcribe that portion of the tape recording of the trial. Thus the only testimony in the record on appeal is that presented by plaintiff as a part of her case in chief. That testimony is contradictory as to the terms of the agreement governing this transaction and as to the circumstances of the execution of plaintiff's original contract with defendant. According to plaintiff, defendant agreed that if she could secure a buyer for the Katwin Court property before the listing agreement

expired, he would pay her the 25 percent listing commission even though she no longer worked for him. Defendant denied making any such agreement.

The classic statement governing review of a bench trial is found in *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624, 626, where the supreme court said:

"Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. [Citations.] Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion."

We believe plaintiff's testimony was sufficient to support the finding of the trial court that defendant had agreed to pay her a listing commission, even though she might be employed elsewhere, if she secured a purchaser before the listing expired. Plaintiff stated that the sellers of the property were personal friends of hers, from which the court could infer that the sellers might list the property with plaintiff and her new employer after the listing with defendant expired. For that reason, defendant would be anxious to obtain at least 25 percent of the total commission as the listing broker, and in order to encourage activity and to protect his right to some commission, he would agree to pay plaintiff, who in fact listed the property, the salesperson's portion of the listing commission. Such an inference would not be unreasonable, and we can see no error in the court's ruling.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT and HEIPLE, JJ., concur.